1   Kent A. Gardiner (pro hac vice)
    Kathryn D. Kirmayer (pro hac vice)
2   Jerome A. Murphy (pro hac vice)
    CROWELL & MORING LLP
3   1001 Pennsylvania Avenue, N.W.
    Washington, D.C.  20004
4   Telephone:  202-624-2500
    Facsimile:  202-628-5116
5   E-mail:  kgardiner@crowell.com
             kkirmayer@crowell.com
6            jmurphy@crowell.com

7   Daniel A. Sasse (CA Bar No. 236234)
    Christine E. Cwiertny (CA Bar No. 222098)
8   CROWELL & MORING LLP
    3 Park Plaza, 20th Floor
9   Irvine, California  92614
    Telephone:  949-263-8400
10  Facsimile:  949-263-8414
    E-mail:  dsasse@crowell.com
11           ccwiertny@crowell.com

12  Robert Turken (pro hac vice)
    BILZIN SUMBERG BAENA PRICE & AXELROD LLP
13  200 South Biscayne Boulevard, Suite 2500
    Miami, Florida 33131-5340
14  Telephone:   305-350-2381
    Facsimile:    305-351-2262
15  E-mail:  rturken@bilzin.com

16  Counsel for
    All American Semiconductor, Inc.

17

18              UNITED STATES DISTRICT COURT

19      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

20  ALL AMERICAN SEMICONDUCTOR        Case No.
    INC., a Delaware corporation,
21                                    **COMPLAINT FOR DAMAGES AND**
            Plaintiff,                **INJUNCTIVE RELIEF FOR**
22                                    **VIOLATION OF THE SHERMAN**
        v.                            **ACT PURSUANT TO 15 U.S.C. § 1**
23
    HYNIX SEMICONDUCTOR, INC., a
24  Korean corporation, HYNIX        **DEMAND FOR JURY TRIAL**
    SEMICONDUCTOR AMERICA, INC., a
25  California corporation, MOSEL VITELIC
    INC., a Taiwanese corporation, MOSEL
26  VITELIC CORPORATION, a California
    corporation, NANYA TECHNOLOGY
27  CORPORATION, a Taiwanese corporation,
    NANYA TECHNOLOGY CORPORATION,
28  USA, a California corporation, WINBOND
    ELECTRONICS CORPORATION, a

COMPLAINT OF ALL AMERICAN SEMICONDUCTOR, INC.

*(stamp)* FILED
FEB 28 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*(left margin)* crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  Taiwanese corporation, WINBOND
   ELECTRONICS CORPORATION
2  AMERICA, a Delaware corporation, ELPIDA
   MEMORY, INC., a Japanese corporation,
3  ELPIDA MEMORY (USA) INC., a
   Delaware corporation, MITSUBISHI
4  ELECTRIC CORPORATION, a Japanese
   corporation, MITSUBISHI ELECTRIC AND
5  ELECTRONICS USA, INC., a Delaware
   corporation, INFINEON TECHNOLOGIES
6  AG, a German corporation, INFINEON
   TECHNOLOGIES NORTH AMERICA
7  CORPORATION, a Delaware corporation,
   MICRON TECHNOLOGY, INC., a Delaware
8  corporation, MICRON SEMICONDUCTOR
   PRODUCTS, INC., an Idaho corporation,
9  NEC ELECTRONICS CORPORATION, a
   Japanese corporation, NEC ELECTRONICS
10 AMERICA, INC., a California corporation,
   and DOES 1 through 5,
11
                              Defendants.
12

13        Plaintiff All American Semiconductor, Inc. for its Complaint against defendants

14  Hynix Semiconductor, Inc.; Hynix Semiconductor America, Inc.; Mosel Vitelic Inc.;

15  Mosel Vitelic Corporation; Nanya Technology Corporation; Nanya Technology

16  Corporation (USA); Winbond Electronics Corporation; Winbond Electronics

17  Corporation America; Elpida Memory, Inc.; Elpida Memory (USA), Inc.; Mitsubishi

18  Electric Corporation; Mitsubishi Electric and Electronics USA, Inc.; Infineon

19  Technologies AG; Infineon Technologies North America Corporation; Micron

20  Technology, Inc.; Micron Semiconductor Products, Inc.; NEC Electronics Corporation;

21  NEC Electronics America Inc.; and Doe defendants 1 through 5, alleges as follows:

22  **A.    Nature of Action**

23        1.        Plaintiff, All American Semiconductor, Inc. ("All American") brings this

24  action to recover damages it has incurred as a result of long-standing collusion by

25  suppliers of dynamic random access memory ("DRAM") computer chips.  As described

26  in more detail below, in June 2002 the United States Department of Justice announced

27  that it had begun to investigate a conspiracy among the world's DRAM suppliers.

28  During the conspiracy, DRAM suppliers conspired to control production capacity, raise

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1

1   prices or slow their decline, allocate customers, and otherwise unlawfully overcharge

2   their DRAM customers.  During that same period of time, All American purchased in

3   excess of a hundred million dollars worth of DRAM chips from the conspirators.

4         2.        As a result of the Department of Justice's investigation, five of the

5   world's largest suppliers of DRAM chips have now admitted their involvement in the

6   conspiracy, including Hynix Semiconductor, Inc., Infineon Technologies AG, Elpida

7   Memory, Inc., and Micron Technology, Inc.  Micron Technology, Inc. obtained amnesty

8   from criminal prosecution by being the first to admit its participation in the illegal cartel,

9   and Infineon Technologies AG, Hynix Semiconductor, Inc., and Elpida Memory, Inc.

10  have agreed to enter guilty pleas and pay fines based on their involvement in the illegal

11  activities.  Furthermore, senior officials of Micron Technology, Inc., Hynix

12  Semiconductor, Inc., and Infineon Technologies AG have pleaded guilty to colluding

13  with their competitors to fix and raise DRAM prices.  The Department of Justice

14  investigation is continuing, and additional guilty pleas from other conspirators are

15  expected.

16        3.        All American seeks treble damages and injunctive relief to remedy

17  injuries it has sustained as a result of the defendants' illegal activities.

18  **B.        Jurisdiction and Venue**

19        4.        All American brings this action pursuant to Sections 4, 12, and 16 of the

20  Clayton Act (15 U.S.C. § § 15, 22, and 26) (2000 suppl. 2) for treble damages and

21  injunctive relief, as well as reasonable attorneys' fees and costs, with respect to the

22  injuries it has sustained arising from violations by the defendants of Section 1 of the

23  Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2).

24        5.        This Court has jurisdiction over this action pursuant to 28 U.S.C.

25  § § 1331 and 1337(a).  In addition, this Court has jurisdiction over this action pursuant to

26  the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that All

27  American's injuries were proximately caused by increased prices for DRAM in the

28  United States.

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

6.      Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), in that at least one of the defendants resides in this judicial district or is licensed to do business or is doing business in this judicial district.

7.      This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant (a) transacted business throughout the United States, including this district; (b) manufactured, sold, shipped, and delivered substantial quantities of DRAM throughout the United States, including this district; (c) had substantial contacts with the United States; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

**C.      Intradistrict Assignment**

8.      Because a large number of the defendants maintain their principal places of business within Santa Clara County, this action arises in Santa Clara County for the purposes of Civil L.R. 3-2(c), and should be assigned to the San Jose Division. Concurrent with or shortly after the filing of its Complaint, however, All American will file an Administrative Motion to Consider Whether Cases Should Be Related in the *In re DRAM Antitrust Litigation*, MDL 02-1486 PJH in the United States District Court for the Northern District of California, San Francisco Division.

**D.      Parties**

9.      All American is a Delaware corporation with its principal place of business in Miami, Florida. All American is a distributor of electronic components, with net sales in 2005 of approximately $433 million. During the relevant timeframe, All American was a direct purchaser of DRAM from some of the defendants as well as from their co-conspirators. As a direct purchaser, All American negotiated with the defendants and their co-conspirators the price of DRAM and memory modules primarily comprised of DRAM. All American purchased DRAM for its own use as well as for the use of its

1   subsidiaries both domestic and foreign. The defendants' and their co-conspirators' price-

2   fixing was the proximate cause of artificially elevated prices actually paid by All

3   American for DRAM delivered throughout the United States. To the extent All

4   American was an indirect purchaser of DRAM, the price of that DRAM was artificially

5   inflated, causing All American to pay a higher price.

6           10.     Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains

7   its head offices at San 136-1, Ami-Ri, Bubal-eub, Ichon-si, Kyongki-do, Korea. During

8   the time covered in this complaint, Hynix Semiconductor, Inc., a manufacturer of

9   DRAM, sold and distributed DRAM throughout the world, including the United States.

10  On information and belief, as a Korea-based manufacturer of DRAM with facilities

11  throughout the world, Hynix Semiconductor, Inc. manipulated the price of DRAM

12  charged around the globe, including in the United States, by intentionally restricting the

13  production capacity of its manufacturing plants located in Asia and directing its

14  international affiliates, including those located in the United States, to charge collusively-

15  established prices for DRAM. As a result of Hynix Semiconductor, Inc.'s illegal

16  activities directed at the United States and elsewhere, All American paid artificially-

17  inflated prices for DRAM.

18          11.     Defendant Hynix Semiconductor America, Inc. is a California

19  corporation located at 3101 North First Street, San Jose, California 95134. Hynix

20  Semiconductor America, Inc., on information and belief, is a wholly-owned and

21  controlled subsidiary of defendant Hynix Semiconductor, Inc. (collectively referred to as

22  "Hynix"). During the time period covered in this complaint, Hynix Semiconductor

23  America, Inc. sold and distributed DRAM throughout the United States.

24          12.     Defendant Mosel Vitelic Inc. is a Taiwanese corporation which

25  maintains its headquarters at No. 1 Creation Rd. 1, Hsinchu Science Park, Hsinchu,

26  Taiwan, 30077, R.O.C. During the time period covered in this complaint, Mosel Vitelic

27  Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the world,

28  including the United States. On information and belief, as a Taiwan-based manufacturer

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

4

1   of DRAM with facilities throughout the world, Mosel Vitelic Inc. manipulated the price

2   of DRAM charged around the globe, including in the United States, by intentionally

3   restricting the production capacity of its manufacturing plants located in Asia and

4   directing its international affiliates, including those located in the United States, to charge

5   collusively-established prices for DRAM.  As a result of Mosel Vitelic Inc.'s illegal

6   activities directed at the United States and elsewhere, All American paid artificially-

7   inflated prices for DRAM.

8          13.     Defendant Mosel Vitelic Corporation is a California corporation located

9   at 3910 North First Street, San Jose, California 95314.  Mosel Vitelic Corporation, on

10  information and belief, is a wholly-owned and controlled subsidiary of defendant Mosel

11  Vitelic Inc. (collectively referred to as "Mosel Vitelic").  During the time period covered

12  in this complaint, Mosel Vitelic Corporation sold and distributed DRAM throughout the

13  United States.

14         14.     Defendant Nanya Technology Corporation is a Taiwanese corporation

15  which maintains its headquarters at Hwa Ya Technology Park, 669, Fu Hsing 3rd Rd.

16  Keuishan, Taoyuan, Taiwan, R.O.C.  During the time period covered in this complaint,

17  Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM

18  throughout the world, including the United States.  On information and belief, as a

19  Taiwan-based manufacturer of DRAM with facilities throughout the world, Nanya

20  Technology Corporation manipulated the price of DRAM charged around the globe,

21  including in the United States, by intentionally restricting the production capacity of its

22  manufacturing plants located in Asia and directing its international affiliates, including

23  those located in the United States, to charge collusively-established prices for DRAM.

24  As a result of Nanya Technology Corporation's illegal activities directed at the United

25  States and elsewhere, All American paid artificially-inflated prices for DRAM.

26         15.     Defendant Nanya Technology Corporation, USA, a California

27  corporation, is located at 675 E. Brokaw Road, San Jose, California 95112.  On

28  information and belief, Nanya Technology Corporation USA is a wholly-owned and

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92654-8505
949 263-8400

5

1  controlled subsidiary of defendant Nanya Technology Corporation (collectively referred

2  to as "Nanya").  In addition to its main U.S. office in San Jose, Nanya Technology

3  Corporation operates sales and technical support offices in San Jose, California, Raleigh,

4  North Carolina, and Austin, Texas and operates a memory design center in Houston,

5  Texas.  During the time period covered in this complaint, Nanya Technology Corporation

6  USA sold and distributed DRAM throughout the United States.

7         16.      Defendant Winbond Electronics Corporation is headquartered at No. 4,

8  Creation Road 3 and No. 9, Li-Shin Road, Science-Based Industrial Park, Hsinchu,

9  Taiwan, 300, R.O.C.  During the time period covered in this complaint, Winbond

10  Electronics Corporation, a manufacturer of DRAM, sold and distributed DRAM

11  throughout the world, including the United States.  On information and belief, as a

12  Taiwan-based manufacturer of DRAM with facilities throughout the world, Winbond

13  Electronics Corporation manipulated the price of DRAM charged around the globe,

14  including in the United States, by intentionally restricting the production capacity of its

15  manufacturing plants located in Asia and directing its international affiliates, including

16  those located in the United States, to charge collusively-established prices for DRAM.

17  As a result of Winbond Electronics Corporation's illegal activities directed at the United

18  States and elsewhere, All American paid artificially-inflated prices for DRAM.

19         17.      Defendant Winbond Electronics Corporation America, a Delaware

20  corporation, is located at 2727 North First Street, San Jose, California 95134 and is a

21  wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as

22  "Winbond").  During the time period covered in this complaint, Winbond Electronics

23  Corporation America sold and distributed DRAM throughout the United States.

24         18.      Defendant Elpida Memory, Inc., a Japanese corporation, maintains its

25  executive offices at Sumitomo Seimei Yaesu Building, 3F, 2-1 Yaesu 2-chome, Chuo-ku,

26  Tokyo, Japan.  During the time period covered in this complaint, Elpida Memory Inc., a

27  manufacturer of DRAM, sold and distributed DRAM throughout the world, including the

28  United States.  On information and belief, as a Japan-based manufacturer of DRAM with

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

6

1   facilities throughout the world, Elpida Memory, Inc. manipulated the price of DRAM

2   charged around the globe, including in the United States, by intentionally restricting the

3   production capacity of its manufacturing plants located in Asia and directing its

4   international affiliates, including those located in the United States, to charge collusively-

5   established prices for DRAM.  As a result of Elpida Memory, Inc.'s illegal activities

6   directed at the United States and elsewhere, All American paid artificially-inflated prices

7   for DRAM.

8       19.     Defendant Elpida Memory (USA) Inc., a Delaware corporation, is

9   located at 2001 Walsh Ave, Santa Clara, California, 95050 and is a wholly-owned

10  subsidiary of Elpida Memory, Inc. (collectively referred to as "Elpida").  During the time

11  period covered in this complaint, Elpida Memory (USA) Inc. sold and distributed DRAM

12  throughout the United States.

13      20.     Defendant Mitsubishi Electric Corporation, a Japanese corporation, is

14  headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310,

15  Japan.  During the time period covered in this complaint, Mitsubishi Electric

16  Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

17  world, including the United States.  On information and belief, as a Japan-based

18  manufacturer of DRAM with facilities throughout the world, Mitsubishi Electric

19  Corporation manipulated the price of DRAM charged around the globe, including in the

20  United States, by intentionally restricting the production capacity of its manufacturing

21  plants located in Asia and directing its international affiliates, including those located in

22  the United States, to charge collusively-established prices for DRAM.  As a result of

23  Mitsubishi Electric Corporation's illegal activities directed at the United States and

24  elsewhere, All American paid artificially-inflated prices for DRAM.

25      21.     Defendant Mitsubishi Electric and Electronics USA, Inc., a Delaware

26  corporation, is headquartered at 5665 Plaza Drive, Cypress, CA 90630-0003 and is a

27  wholly-owned subsidiary of Mitsubishi Electric Corporation.  During the time period

28  covered in this complaint, Mitsubishi Electric and Electronics USA, Inc. sold and

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

7

1 distributed DRAM throughout the United States.

2     22.     Defendant Infineon Technologies AG, a German corporation, has its

3 principal place of business at Am Campeon 1-12, Munich, 85779, Germany.  During the

4 time period covered in this complaint, Infineon Technologies AG, a manufacturer of

5 DRAM, sold and distributed DRAM throughout the world, including the United States.

6 On information and belief, as a Germany-based manufacturer of DRAM with facilities

7 throughout the world, Infineon Technologies AG manipulated the price of DRAM

8 charged around the globe, including in the United States, by intentionally restricting the

9 production capacity of its manufacturing plants located throughout the world and

10 directing its international affiliates, including those located in the United States, to charge

11 collusively-established prices for DRAM.  As a result of Infineon Technology AG's

12 illegal activities directed at the United States and elsewhere, All American paid

13 artificially-inflated prices for DRAM.

14     23.     Defendant Infineon Technologies North America Corporation, a

15 Delaware corporation and a wholly-owned subsidiary of Infineon Technologies AG

16 (collectively, "Infineon"), has its principal place of business at 640 N. McCarthy Blvd.

17 Milipitas, California 95035.  During the time period covered in this complaint, Infineon

18 Technologies North America Corporation sold and distributed DRAM throughout the

19 United States.  Recently, Infineon spun-off its DRAM business, which is now operating

20 as Qimonda, a wholly-owned subsidiary of Infineon Technologies AG.

21     24.     Defendant Micron Technology, Inc. is a Delaware corporation with its

22 principal place of business at 8000 South Federal Way, Boise, Idaho 83707.  During the

23 time period covered in this complaint, Micron Technology, Inc., a designer, developer

24 and manufacturer of DRAM, sold and distributed DRAM throughout the United States.

25     25.     Defendant Micron Semiconductor Products, Inc. is an Idaho corporation

26 located at 8000 South Federal Way, Boise, Idaho and is a wholly-owned and controlled

27 subsidiary of defendant Micron Technology, Inc. (collectively referred to as "Micron").

28 During the time period covered in this complaint, Micron sold and distributed DRAM,

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

8

1   including through its Crucial Technology retail sales division, to computer manufacturers

2   and other end users throughout the United States.

3        26.     Defendant NEC Electronics Corporation is a Japanese corporation with

4   its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa

5   211-8668, Japan.  During the time period covered in this complaint, NEC Electronics

6   Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

7   world, including the United States.  On information and belief, as a Japan-based

8   manufacturer of DRAM with facilities throughout the world, NEC Electronics

9   Corporation manipulated the price of DRAM charged around the globe, including in the

10   United States, by intentionally restricting the production capacity of its manufacturing

11   plants located in Asia and directing its international affiliates, including those located in

12   the United States, to charge collusively-established prices for DRAM.  As a result of

13   NEC Electronics Corporation's illegal activities directed at the United States and

14   elsewhere, All American paid artificially-inflated prices for DRAM.

15        27.     Defendant NEC Electronics America, Inc., a California corporation, is a

16   wholly-owned subsidiary of NEC Electronics Corporation (collectively referred to as

17   "NEC") with its principal place of business at 2880 Scott Boulevard, Santa Clara,

18   California 95050.  During the time period covered in this complaint, NEC Electronics

19   America, Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the

20   world, including the United States.

21        28.     Doe defendants 1 through 5 are persons whose identities are as yet

22   unknown to All American and who have participated in the violations of the federal

23   antitrust laws for which All American seeks relief, and have performed acts and made

24   statements in furtherance thereof.

25        29.     Various individuals, partnerships, corporations, and associations other

26   than the defendants named in this complaint (the "Co-conspirators" and jointly with the

27   named defendants, "Defendants") have participated in the violations of the federal

28   antitrust laws for which All American seeks relief, and have performed acts and made

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF ALL AMERICAN SEMICONDUCTOR, INC.

1    statements in furtherance thereof.

2        30.    Whenever in this complaint reference is made to any act, deed, or

3    transaction of any corporation, the allegation means that the corporation engaged in the

4    act, deed, or transaction by or through its officers, directors, agents, employees, or

5    representatives while they were actively engaged in the management, direction, control,

6    or transaction of the corporation's business or affairs.

7    **E.    Trade and Commerce**

8        31.    During the relevant period, Defendants sold and shipped substantial

9    quantities of DRAM in a continuous and uninterrupted flow of interstate and international

10   commerce to customers located in countries and states other than the countries and states

11   in which Defendants manufacture DRAM.

12       32.    The business activities of Defendants that are the subject of this

13   Complaint were within the flow of, and substantially affected, interstate and international

14   trade and commerce.  The global conspiracy, in which Defendants participated, had a

15   direct, substantial, and reasonably foreseeable effect on United States commerce.

16       33.    During the relevant period, Defendants made most of the DRAM sales in

17   the global market.

18   **F.    Statement of Facts**

19       34.    Defendants manufacture, sell, and distribute memory chips throughout

20   the world.  Memory chips store data in a wide variety of computing and electronic

21   devices.  Memory chips are used in the manufacture of, and are critical to the functioning

22   of, such devices as personal computers, workstations, servers, printers, fax machines,

23   digital cameras and video recorders, video game equipment, personal digital assistants,

24   and cellular and wireless telephones.

25       35.    DRAM is the dominant, most common form of memory chip.  "Random

26   Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed

27   directly from any part of the memory, rather than having to proceed sequentially from

28   some starting place.  DRAM is called "dynamic" because it must have its storage cells

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

10

1 refreshed or given a new electronic charge every few milliseconds.

2     36.     A DRAM chip is a large-scale integrated circuit with simple structures,

3 and is fairly easy to manufacture. Accordingly, DRAM is a commodity, with each of

4 Defendants' products being freely interchangeable with the products of another company.

5     37.     DRAM is sold in individual chips, or in modules with several chips

6 attached to each module.

7     38.     DRAM sales exceed $20 billion a year. The world's top four makers of

8 DRAM, all of which are Defendants, control roughly 70% of the market; the top six

9 manufacturers control 96% of the market.

10     39.     The DRAM industry enjoyed an extended period of prosperity in the

11 mid-1990s as the PC computer industry boomed. During this time DRAM manufacturers

12 could not meet the demand for their products. Revenues from DRAM sales nearly tripled

13 between 1993 and 1995. DRAM manufacturers responded by building substantial new

14 chip-making capacity. Factories for the manufacture of DRAM chips are referred to as

15 fabrication plants, or "fabs."

16     40.     In 1996, this new capacity, coupled with demand decline, led to pressure

17 on Defendants to cut their prices. Defendants responded by illegally conspiring to limit

18 capacity and artificially fix and raise prices.

19     41.     Specifically, in December 1996, DRAM manufacturers attended a

20 SyncLink Consortium. SyncLink was a DRAM industry organization whose members

21 consisted of DRAM suppliers. During this December 1996 meeting, DRAM suppliers

22 resolved to establish unified strategies to address market concerns. Although the

23 organization initially appears to have been created to address technology concerns, the

24 industry reorganized the consortium in January 1999, causing the new president of the

25 organization to acknowledge publicly that the focus of the group would be to "co-

26 ordinate instead of develop new technology."

27     42.     Executives from DRAM suppliers met again in Japan in January 1997.

28 During this meeting the participants agreed that they would need to continue

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

11

1   communicating with each other.  The participants also agreed to use an e-mail

2   distribution software program then known as a reflector e-mail, which permitted industry

3   executives to exchange information via e-mail quickly and confidentially.

4          43.      Shortly after this meeting, in February 1997, DRAM suppliers curtailed

5   production at their DRAM manufacturing facilities, as part of a collusive effort to

6   maintain and raise prices.

7          44.      This coordinated drop in production had an immediate, but temporary,

8   effect on prices, which rose during the second quarter of 1997.  Prices then began to fall

9   again in the second half of 1997.

10         45.      As DRAM prices continued to fall into early 1998, DRAM

11  manufacturers held at least two meetings to discuss the problem in April and June.  The

12  second meeting, held on June 25, was called an "Executive Summit" and was attended by

13  industry executives.  One of the topics at the Summit was how to "Manage Price

14  Competition, Profitability."  Upon information and belief, during these meetings, and in

15  communications before and after these meetings, Defendants discussed supply and

16  pricing issues, and agreed that they would limit their capacity to artificially decrease the

17  supply of, and increase, maintain, or control the price of, DRAM chips.

18         46.      Between June and September of 1998 every major DRAM manufacturer

19  announced that it was curtailing or shutting down DRAM production facilities because of

20  a lack of demand for the product.  Hynix's corporate predecessor, Hyundai,[1] and one of

21  the Co-conspirators each shut down its facilities for approximately one to two weeks in

22  the summer of 1998.  Other suppliers communicated their intentions to slash production.

23         47.      This coordinated withdrawal of production capacity had an immediate

24  effect on prices, which began to rise in June 1998, and increased steadily throughout the

25  rest of the year.

26

27  [1]      The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics.
     In March 2001 Hyundai renamed this subsidiary Hynix Semiconductor.  In August 2001
28  Hyundai spun off the company.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

48.     In August 1998, an email circulated among DRAM suppliers, which warned that during the ramp-up in production of a new DRAM standard being implemented by Rambus, DRAM vendors "will need a constant flow of information to help make wise decisions and to walk the fine line between a pleasant shortage and a disastrous over-supply." A Hyundai executive noted that a shortage would please DRAM manufacturers because "prices go up."

49.     Devin Cole, a former employee of a Co-conspirator, has admitted that before he left his former employer in July 1998 he spoke with competitors regarding price issues. Cole informed federal authorities that these conversations led to agreements on a "range pact" that included "the ranges of prices, where each competitor felt that others would price in the range, and whether each competitor would move prices 'a little' or 'a lot'." Upon information and belief, this evidence is corroborated by Cole's own notes and other documents.

50.     DRAM prices continued to climb steadily in 1999. During this time, Defendants continued their illegal communications with each other about prices, market share, and supply. In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi, the vice president of marketing for Hyundai and head of the DRAM industry group SLDRAM Inc. (the successor organization to SyncLink). The e-mail states that "[w]ith [one of the Co-conspirators] building significant amounts of product, we need to work with them to limit the supply in the market, otherwise we both will be competing for market share which will result in an oversupply. We have to meet with [the Co-conspirator] and discuss our and their production plan, TAM analysis and targeted market share." In response, another Hyundai employee stated that he had "a connection" with the Co-conspirator and offered to set up a meeting.

51.     A short time later, Hyundai and one of the Co-conspirators both began raising prices at an accelerated rate. Indeed, in September 1999, industry sources noted that South Korea's DRAM suppliers, including Hyundai, were raising prices in one-to-two week intervals.

crowell | moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

13

52.     Despite their unlawful and secret cooperation to reduce DRAM production and increase price, Defendants publicly misrepresented that DRAM prices escalated due to increased demand resulting from strong sales of low-priced PCs incorporating large quantities of DRAM.  In a September 13, 1999, Electronic News article, a Co-conspirator's officer said: "Because we see the value PC and free PCs entering the market at extraordinary numbers, DRAM oversupply has silently gone into a shortage."  Chee-Wai Ho, director of product marketing for memory products at Infineon, agreed.

53.     Because of Defendants' collusive activities, DRAM prices remained artificially inflated from the middle of 1998 through the fall of 2000.

54.     In August 2000 prices began to drop once again.  By mid-2001, every major DRAM manufacturer was reporting losses.  Their stock prices fell.  Once again the Defendants responded by conspiring with each other to control production and raise prices.  Their collusive activities included, but were not limited to, the following:

- In July 2001, Hynix announced plans to cut production to boost prices. A spokeswoman for Hynix stated: "We understand other companies are also considering cuts."

- In August 2001, a Mosel Vitelic executive admitted that Taiwan DRAM manufacturers had discussed curtailing production in an effort to raise prices.

- Also in August, Thomas Chang at Mosel Vitelic acknowledged talking to other Taiwan DRAM manufacturers about reducing supply.  "Our preliminary agreement is to trim some production starting September."

- In November, Micron manager Kathy Radford acknowledged efforts of Infineon and a Co-conspirator to raise prices of DRAM, and stated that Micron intended to raise prices for all of its OEM customers: "The consensus from all suppliers is that if Micron makes the move, all of them will do the same and make it stick."

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

14

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

- Alfred Censullo, a former Micron sales manager, also confirmed that Micron spoke with competitors about pricing. Censullo pleaded guilty in January 2004 to federal charges of obstruction of justice for altering and withholding documents responsive to a grand jury subpoena issued to Micron. At his sentencing hearing, Censullo acknowledged that these documents consisted of notes that he took during weekly conference calls with other regional sales managers at Micron, who like Censullo were responsible for customers. During these calls the managers would discuss price recommendations for customers and the prices at which competitors would sell their products to these customers. Censullo's notes reflected this pricing information and identified communications between Micron and its competitors about sales and pricing.

55.     These collusive activities perpetrated by Defendants worked; by the end of 2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot price.

56.     Nevertheless, Defendants again publicly, and falsely, attributed the increase in DRAM price to legitimate market forces. In a December 4, 2001, interview published on Simmtester.com, Steve Appleton, chief executive officer of Micron, was asked why prices had recently increased sharply and suddenly. He answered:

"I have no idea. There clearly was a belated increase in demand as the seasonal rebound we had expected two-and-a-half months earlier finally kicked in. And, clearly the Japanese are cutting back their DRAM production. Even Hynix, which is so unpredictable, cut some production by temporarily closing its Eugene, Ore., fab. When it was running at 40K wafer capacity a month, that fab alone probably had about 2.5% of the world's DRAM production."

57.     DRAM price increases, as well as Defendants' conspiracy, continued into 2002. From November 2001 to April 2002, DRAM prices tripled. And in May

15

1   2002, Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US

2   $3. That's the consensus . . . You don't need to have a meeting. You just need to have a

3   phone call. Everybody knows each other. We just said 'try not to sell below US $3.'"

4   On the other hand, in a press release issued on April 15, 2002, Hynix represented that its

5   increased revenues resulted from increased demand in the DRAM market.

6   **G.   The Department of Justice Investigation**

7        58.        On or about September 4, 2004, Infineon Technologies AG entered into

8   a plea agreement with the government, pursuant to which it agreed to plead guilty to

9   conspiring to fix prices in the DRAM market between July 1999 and June 2002.

10        59.        On April 21, 2005, the Department of Justice announced that it had

11  entered into a plea agreement with Hynix Semiconductor, Inc. pursuant to which Hynix

12  Semiconductor, Inc. agreed to plead guilty to conspiring to fix prices in the DRAM

13  market between April 1999 and June 2002.

14        60.        Three months later, on January 30, 2006, the Department of Justice

15  announced that it had entered into a plea agreement with Elpida Memory, Inc. pursuant to

16  which Elpida Memory, Inc. agreed to plead guilty to conspiring to fix prices in the

17  DRAM market between April 1999 and June 2002.

18  **H.   Violations Alleged**

19                          **FIRST CAUSE OF ACTION**

20              **(Violation of Sherman Act Against All Defendants)**

21        61.        All American incorporates by reference, as if fully set forth, the

22  allegations of paragraphs 1 through 60 of this Complaint.

23        62.        Beginning in or about January 1997, the exact date being unknown to All

24  American, and continuing thereafter at least through 2002 (the "Cartel Period"),

25  Defendants, by and through their officers, directors, employees, agents, or other

26  representatives, entered into a continuing agreement, combination and/or conspiracy to

27  unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act,

28  15 U.S.C. § 1 (2000 suppl. 2).

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    63.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and

2  maintained the market price of DRAM as herein alleged.

3    64.    The agreement, combination, and/or conspiracy consisted of a continuing

4  agreement, understanding, and concert of action among Defendants, the substantial terms

5  of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the

6  market for, DRAM they sold throughout the world, including the United States.

7    65.    Upon information and belief, for the purposes of formulating and

8  effectuating their agreement, combination, and/or conspiracy, Defendants did those

9  things they contracted, combined or conspired to do, including:

10           a.    participating in meetings and conversations to discuss the

11                 prices of and/or allocate the global market for DRAM;

12           b.    agreeing to manipulate capacity, production, and prices so as

13                 to boost sagging DRAM prices in a manner that deprived

14                 direct purchasers of free and open competition;

15           c.    issuing price announcements and price quotations in

16                 accordance with the agreements reached; and

17           d.    selling DRAM to customers throughout the world, including

18                 the United States, at artificially inflated and non-competitive

19                 prices.

20    66.    The above agreement, combination and/or conspiracy has had the

21  following effects, among others:

22           a.    price competition in the sale of DRAM by Defendants has

23                 been restrained, suppressed, and eliminated throughout the

24                 world, including the United States;

25           b.    prices for DRAM sold by Defendants have been raised, fixed,

26                 maintained, and stabilized at artificially high and

27                 noncompetitive levels throughout the world, including the

28                 United States; and

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

17

c.      purchasers of DRAM from Defendants have been deprived of the benefit of free and open competition in the purchase of DRAM.

67.     As a direct and proximate result of the unlawful conduct of Defendants in furtherance of their continuing agreement, combination, and/or conspiracy, All American has been injured in its business and property in that it has paid more for DRAM than it otherwise would have paid in the absence of the Defendants' unlawful price fixing.

**I.      Tolling of the Applicable Statute of Limitations due to Fraudulent Concealment**

68.     All American incorporates by reference, as if fully set forth, the allegations of paragraphs 1 through 61 of this Complaint.

69.     All American had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to fall 2004 when Infineon Technologies AG entered into a plea agreement the United States Department of Justice, pursuant to which Infineon agreed to plead guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

70.     Defendants engaged in a successful price-fixing conspiracy concerning DRAM computer chips, which they affirmatively concealed, at least in the following respects:

a.      By meeting secretly to discuss prices, and customers and markets, of DRAM computer chips sold in the U.S. and elsewhere; and

b.      By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communication in furtherance of the illegal scheme.

COMPLAINT OF ALL AMERICAN SEMICONDUCTOR, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

71.     Price increases of DRAM computer chips before and during the Cartel
Period were not unusual.  All American was therefore conditioned by experience in
dealing with Defendants of what it believed to be a competitive industry to expect price
increases from time to time.

72.     All American could not have discovered the existence of the
combination and conspiracy alleged herein at an earlier date by the exercise of reasonable
due diligence because of the deceptive practices and techniques of secrecy employed by
the Defendants to avoid detection and affirmatively conceal such violations.  Defendants
consistently ascribed their price increases to ordinary market forces and consideration
including, without limitation, falsely attributing price increases to increased demand,
shortages in supply, increased manufacturing costs, increased prices of labor and of raw
materials, and/or insufficient production capacity.  Such false statements included,
without limitation:

        a.     The statement by a Co-conspirator's officer in a September
                13, 1999, article, alleged more fully above in paragraph 52,
                that higher prices were attributable to a DRAM shortage,
                which was concurred upon by Chee-Wai Ho, director of
                product marketing for memory products at Infineon
                Technologies AG; and,

        b.     Hynix's April 15, 2002, representation, alleged in paragraph
                57, that its increased revenues resulted from increased
                demand in the DRAM market.

73.     Defendants also falsely informed their customers that they were unable
to sell their products at a lower price due to increased manufacturing costs, increased
prices of labor and of raw materials, and insufficient production capacity.

74.     All American had no reason to disbelieve these statements.  Furthermore,
most of the explanations provided by Defendants involved non-public and/or proprietary
information completely in Defendants' control such that All American could not verify

19

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   their accuracy.  Defendants' purported reasons for their price increases of DRAM were

2   materially false and misleading and were made for the purpose of concealing Defendants'

3   anti-competitive scheme as alleged herein.  In truth, at all relevant times, the price of

4   DRAM was artificially inflated and maintained as a direct result of the Defendants' anti-

5   competitive scheme, the operation of which was a substantial (but undisclosed) factor in

6   the pricing of DRAM during the relevant period.

7          75.      As a result of the fraudulent concealment of the conspiracy, All

8   American asserts the tolling of the applicable statute of limitations affecting its claims.

9   **J.     Damages/Restitution**

10         76.      During the relevant period, All American purchased DRAM from

11  Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust

12  violations herein alleged, paid more for such products than they would have paid in the

13  absence of such antitrust violations.  As a result, All American has sustained damages to

14  its business and property and defendants wrongfully acquired money from All American

15  in an amount to be determined at trial.

16         **K.     Prayer for Relief**

17         WHEREFORE, s demand judgment against the defendants, and each of them, as

18  follows:

19         77.      A declaration that the unlawful agreement, combination and/or

20  conspiracy alleged herein is an unreasonable restraint of trade of commerce in violation

21  of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2);

22         78.      An injunction enjoining, preliminarily and permanently, the defendants

23  from continuing the unlawful agreement, combination and/or conspiracy alleged herein;

24         79.      An award to All American of damages, as provided by law, and joint and

25  several judgments in favor of All American against the defendants, and each of them, in

26  an amount to be trebled in accordance with federal antitrust laws;

27         80.      An award to All American for the costs of this suit (including expert

28  fees), and reasonable attorneys' fees, as provided by law; and

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

20

COMPLAINT OF ALL AMERICAN SEMICONDUCTOR, INC.

81.     An award to All American for such other and further relief as the nature of this case may require or as this Court deems just, equitable and proper.

DATED:  February **28**, 2007     CROWELL & MORING LLP


By: _____
    Kent A. Gardiner
    Kathryn D. Kirmayer
    Jerome A. Murphy
    CROWELL & MORING LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, D.C.  20004
    Phone: 202-624-2578
    Fax:    202-628-5116

    Daniel A. Sasse
    Christine E. Cwiertny
    CROWELL & MORING LLP
    3 Park Plaza, 20th Floor
    Irvine, CA  92614-8505
    Phone:  949-263-8400
    Fax:    949-263-8414

    Robert Turken
    BILZIN SUMBERG BAENA PRICE &
    AXELROD LLP
    200 South Biscayne Boulevard, Suite 2500
    Miami, Florida 33131-5340
    Phone:  305-350-2381
    Fax:    305-351-2262

    Counsel for Plaintiff
    All American Semiconductor, Inc.

COMPLAINT OF ALL AMERICAN SEMICONDUCTOR, INC.

1

## DEMAND FOR JURY TRIAL

2      82.      All American demands a trial by jury, pursuant to Federal Rules of Civil

3  Procedure, Rule 38(b), of all triable issues.

4

5  DATED: February 28, 2007      CROWELL & MORING LLP

6

7      By: _____

       Kent A. Gardiner
8      Kathryn D. Kirmayer
       Jerome A. Murphy
9      CROWELL & MORING LLP
       1001 Pennsylvania Avenue, N.W.
10     Washington, D.C.   20004
       Phone:  202-624-2578
       Fax:     202-628-5116
11

12     Daniel A. Sasse
       Christine E. Cwiertny
13     CROWELL & MORING LLP
       3 Park Plaza, 20th Floor
14     Irvine, CA  92614-8505
       Phone:  949-263-8400
15     Fax:     949-263-8414

16     Robert Turken
       BILZIN SUMBERG BAENA PRICE &
17     AXELROD LLP
       200 South Biscayne Boulevard, Suite 2500
18     Miami, Florida 33131-5340
       Phone:  305-350-2381
19     Fax:     305-351-2262

20     Counsel for Plaintiff
       All American Semiconductor, Inc.

21

22

23

24

25

26

27

28

22

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED: February 28, 2007        CROWELL & MORING LLP

By: _____
Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.   20004
Phone:  202-624-2578
Fax:      202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone:  949-263-8400
Fax:      949-263-8414

Robert Turken
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5340
Phone:  305-350-2381
Fax:      305-351-2262

Counsel for Plaintiff
All American Semiconductor, Inc.

2925590v6  (Cam No. 101073.007)